LOGAN, &c.
*vs.*
ANDERSON, &c.

*4. When the husband parts with an equitable title, and with the possession before he obtains the legal title, and afterwards acquires the legal title, he holds it in trust for his vendee, and the widow is not entitled to dower.*

---

## Logan, &c. *vs.* Anderson, &c.

APPEAL FROM GARRARD CIRCUIT.

Case 19.

PET. EQ.

1 A creditor having two securities for his debt, must so exercise his right as not to prejudice another creditor having a claim to satisfaction out of one of the securities. (*Story's Eq.* 1 vol. sec. 633.) Equity, however, will not marshal the assets of a debtor to the prejudice of the rights of one creditor to benefit another.

2. A creditor having two securities has a right to go upon all or either security for satisfaction; his interest under each security is several, and the one independent of the other, and the one cannot be diminished by reference to the value of the other. (2 *Russ.* 289.)

3. If a creditor have a mortgage on property sufficient to pay fifty cents on the dollar, and a second mortgage be made to the same and other creditors sufficient to pay fifty cents in the dollar to all, the first creditor has a right to satisfaction of his whole claim, i. e. to fifty cents in the dollar on his original claim, irrespective of what was paid by the first mortgage.

4. As a general rule, the debts of a mortgagee, who has more than one security, will be thrown upon all his securities ratably *pari passu*, according to the value, and leave the balance to others to whom it is specially mortgaged. *Barnes vs. Rochester*, 1 *Young and Collyer*, 20 *Eng. Chy. Rep.* 400.)

LOGAN, &c.
*vs.*
ANDERSON, &c.

[The facts of the case are stated in the opinion of the court. REP.]

*S. Turner*, for appellants—

Though we have not been able to find a case in every respect precisely like this, we think the principles deducible from all the authorities stand opposed to the decision of the circuit court.

The object, purport, and legal effect of the separate assignment of Teeter, and of the partnership assignment of Teeter, Maxey & Co., was to secure the whole debt due to the appellants, and not a part of each. We admit the right of the other creditors to compel the appellants first to exhaust the separate securities; in doing this, however, it must be without injury to the appellants, who stand on equal footing with the other creditors of the firm, under the assignment made by the partnership, and have the right to their full *pro rata* dividend upon their whole debt. Such is the extent to which creditors holding but one security for their debts are entitled to in a contest with those holding two securities.

Suppose the partnership fund had been first realized and distributed *pro rata* amongst all the creditors of the firm, and afterwards the New York fund, and the proceeds of Teeter's separate estate, had been then realized, and the amount had been greater than necessary to pay the claims, could the other firm creditors have asked to be substituted to the rights of the appellants to a greater extent than the surplus after satisfying the balance due to the appellants?

They certainly could not. It devolves upon the appellees, therefore, to show that the equities of the parties is changed, by first realizing and applying the New York fund, and the proceeds of the separate estate of the Teeters, and applying them to the satisfaction of the appellants demands, to which they had been pledged. In *Story's Eq.*, 1 *vol.*, *sec.* 633, it is said, "the general principle is, that if one party has ' a lien on or interest in two funds for a debt, and ' another party has a lien on and interest in one only ' of the funds of another, the latter has a right, in ' equity, to compel the former to resort to the other ' fund in the first instance for satisfaction, if that ' course is necessary for the satisfaction of the claims ' of both parties, whenever it *will not trench upon the* ' *rights, or operate to the prejudice of the party entitled to* ' *the double fund.* Thus a mortgagee, who has two ' funds as against the other specialty creditors, who ' have but one fund, will, in case of the death of the ' mortgagor, be compelled first to resort to the mort- ' gage security, and will be allowed to claim against ' the common fund only what the mortgage on a sale ' is deficient to pay." *See also* 1 *John. Chy. Rep.* 413.

These authorities show that creditors having a double security for their debts are not to be prejudiced by being compelled to resort to a fund on which another creditor has no lien; and further shows that the creditor having two securities, after exhausting the separate security, is to be paid the full balance of his debt out of the common fund, on which both creditors have a lien; and hence we conclude, that both upon authority and reason the circuit court erred to the prejudice of appellants. See also *Greenwood vs. Taylor*, 1 *Russell & Mylne*, 185–7.

*A. A. Burton*, on the same side—

The effect of the decision of the circuit court is to give to Logan, the appellee, a *pro rata* distribution, with other creditors of the firms, amounting to about seventy-seven cents on the dollar, after crediting his

claims by the amounts received of Lee and Waller; of this he complains. As a representative of a class of creditors who thus complain, Logan is named, and in this controversy his case will be regarded as that of all the appellants.

Logan has three securities for his debts: 1. Teeter's assignment of the 23rd December, 1853. 2. The orders on Lee and Waller, given 30th December, 1853. 3. The general assignment of the Louisville firms of the 31st December, 1853, and each of them is available to some extent, but no one of them affords him full satisfaction—all together would be more than sufficient indemnity, but as they have been marshaled by the circuit court there is a deficit.

Thus it would seem, that the court should, regardless of Logan's rights, and those interested with him, in the Lee and Waller fund, and under the general assignment of December, 1853, (many of whom have united in this appeal,) have required that the securities should be exhausted in the order of time in which they were given, or if not so, the court should have thrown Logan's debts on his three securities ratably *pari passu,* according to their value, and have left the residue of each to be applied to the other persons to whom it had been specifically transferred. (*See Fisher on Mortgages, sec.* 696. *Law Lib. for May,* 1857; *Barnes vs. Ricksta,* 1 *Young & Collier C. C.* 401; *Bugdin vs. Rignold,* 2 *Ib. C. C.* 377 *and* 399; *Gwyne vs. Edwards,* 2 *Russ.* 289.) The court seems to have overlooked the distinction between a security for, and the payment of a debt. Because a portion of the second security was realized before the first, the court seems to have looked to and treated it as though it was an elder security, because it turned out to be first available; or, that the securities should be applied in the order in which they might be available, instead of the order of time in which they were given. (*See Aldrich vs. Cooper,* 1 *Ves.* 382; *Trimmer vs. Bayne,* 9 *Ib.* 209: 2

*Russ.* 289; 1 *and* 2 *Young & Collier*, 401, 377, *supra*; 1 *Story's Eq.* 633.)

In the case of *ex parte Kendall*, 17 *Ves.* 520, Lord Elden said, "we have gone this length, if A has a ' right to go upon two funds, and B upon one, *having* ' *both the same debtor*, A shall take payment from the ' fund to which he can resort exclusively, that by this ' means of distribution both may be paid; that takes ' place where both are creditors of the same person." This doctrine is approved by Chancellor Kent in *Door vs. Shaw*, 4 *John. Chy. R.* 17. (See also *Story's Eq. sec.* 642 *and* 643, 4 *and* 5.)

Only such parts of a very voluminous record as is necessary to present the points involved has been copied. It is presumed they are sufficient. The only question is as to how the fund shall be distributed. The principle settled, the detail will be easy.

June 13, 1857.    Judge Simpson delivered the opinion of the court.

Teeter made an assignment of his individual estate to Logan and others, on the 23rd December, 1853, to secure the payment of the debts therein specified. On the 30th day of the same month the three firms of Teeter, Maxey & Co., E. Webb, Maxey & Co., and a firm composed of part of the members of the other two firms, and denominated Hog Joint Account, gave to Logan and others, by way of collateral security, orders on some eastern firms for money which they owed to the drawers of the orders.

On the 31st day of the same month the three firms made a general assignment of their effects, together with the individual estates of all the members, not previously disposed of, for the payment, *pro rata*, of their liabilities therein mentioned.

Two actions, one by Teeter and the other by his trustee, to settle up all matters connected with the assignments, were instituted and consolidated, and the appellants being dissatisfied with the decisions given by the court below, on the subject of marshaling the securities, have brought the case to this court to have the judgment revised.

The principle decided by the court below, and which is objected to by the appellants is, that the debts of the creditors who have more than one security shall be credited by the sums they have received, or shall receive from any of the securities, and only be allowed out of the proceeds of the other securities a *pro rata* on the remainder of their debts and liabilities, when reduced by being credited with the sums thus received. The correctness of this principle is the question presented for our consideration.

It is a general rule of equity, that a person who has the means of satisfying his own debts out of several funds, shall so exercise his right as not to take away the security of another creditor, to whose debt one only or less than all of those funds are liable. (*Story's Equity Jurisprudence*, 1 *vol. sec.* 633.)

But equity refuses to marshal securities where, in aiding one incumbrancer, it would injure another, or trench upon the rights, or operate to the prejudice, of the party entitled to the double fund.

What then are the rights of the creditor who has more than one security for his payment? He has a right to go on all or either one of them for his whole debt. His interest under each one is several, and independent of the other, and cannot be diminished by a reference to the value of the other. *(George vs. Edwards*, 2 *Russ.* 289.)

Upon the same principle, if the owner of the different estates mortgage them to one person separately, for distinct debts, or successively to secure the same debt, the mortgagee may insist that one security shall not be redeemed alone, upon the ground that redemption being an equitable right, the person who redeems must, on his part, do equity towards the mortgagee, and redeem him entirely—not taking one of his securities, and leaving him exposed to the risk of deficiency as to the other. He may hold both even against the purchaser of the equity of redemp-

1. A creditor having two securities for his debt, must so exercise his right as not to prejudice another creditor having a claim to satis faction out of the securities. (*Story's Eq.* 1 *vol. sec.* 633.) Equity, however, will not marshal the assets of a debtor to the prejudice of the rights of one creditor to benefit another.

2. A creditor having two securities has a right to go upon all or either security for satisfaction; his interest under each security is several, and the one independent of the other, and the one cannot be diminished by reference to the value of the other. (2 *Russ.* 289.)

LOGAN, &c.
*vs.*
ANDERSON, &c.

3. If a creditor have a mortgage on property sufficient to pay fifty cents on the dollar, and a second mortgage be made to the same and other creditors sufficient to pay fifty cents in the dollar to all, the first creditor has a right to satisfaction of his whole claim, i.e. to fifty cents in the dollar on his original claim, irrespective of what was paid by the first mortgage.

tion of one of them, until payment of all that is due upon both. (*Fisher on the Law of Mortgage*, 382.)

From this doctrine the principle is clearly deducible, that a creditor who has several securities, neither one of which is sufficient for the payment of his debt, has a right to look to each one of them for its payment, in the same manner and to the same extent that he could do if he had no other.

Thus, if property, sufficient for the payment of fifty cents in the dollar, be mortgaged to two or more creditors, and the mortgagor afterwards mortgages other property to the same and to other creditors, to secure the payment of the same debts, and also the debts due to the other creditors, and the fund arising from the last mortgage is also sufficient to pay fifty cents in the dollar, on all the debts therein named, the creditors in the first mortgage have a right to their full proportion thereof, on the whole amount of their debts, without any regard to what has been or may be received by them on the first mortgage. The two securities are sufficient for the payment of those creditors who are entitled to the benefit of both, and yet, if the other creditors in the second mortgage have a right to reduce their debts by applying, as a credit thereon, the amount of their dividend under the first mortgage, and to restrict them to a *pro rata* share of the proceeds of the last mortgage on the balance of their debt, when thus reduced, one-fourth part of it would still remain unpaid, although either security taken separately was sufficient for the payment of one-half of the debt.

Whenever, then, a mortgage or assignment is executed to secure the payment of certain specified debts, and it contains nothing to show that it was intended only to secure the payment of a part of the debt of some of the creditors, and not the whole amount thereof, the mortgagees have each a right to a full rateable share of the mortgage fund on the whole amount of their respective debts. This share cannot be diminished, by the existence of another

security, where both securities are necessary for the payment of the debt. Equity refuses to interfere or to marshal securities to the prejudice of the creditor entitled to the double fund. And it makes no difference, in such a case, whether the benefit of one of the funds has been realized or still remains as a mere security for the payment of the debt.

But it may happen that the creditors who have more securities than one may not require, for the payment of their debts, their full rateable proportion of the proceeds of all the securities, and in that event the question will arise as to the proper and equitable mode of marshaling the securities, so as to do justice to the creditors who are not entitled to the benefit of all, but only to some of the securities?

As a general rule the debts of a mortgagee who has more than one security, will be thrown upon all his securities rateably, *pari passu*, according to the value, and thus leave the residue of each to satisfy the other incumbrancers, to whom it is specially mortgaged. (*Barnes vs. Rackster*, 1 *Young & Collier*, 20 *vol. English Chancery reports*, 400.)

This rule, where there is no intervening equity to prevent its application, will operate equitably among the other creditors, some of whom may be entitled to the benefit of one, and some of them to another one, of the securities. In such a case, one class of creditors has as much right as another class, to insist on having the debts of the creditor who has more than one security thrown upon the other securities, in which they have no interest; and therefore, to do equal justice to all, his debts should be distributed rateably among all the securities.

Wherefore, the judgment of the court is reversed, and cause remanded for further proceedings in conformity with the principles of this opinion.

LOGAN, &c.
vs.
ANDERSON, &c.

4. As a general rule the debts of a mortgagee, who has more than one security, will be thrown upon all his securities rateably *pari passu*, according to the value, and leave the balance to others to whom it is specially mortgaged.— (*Barnes v. Rackster*, 1 *Young and Collyer*, 20 *Eng. Chy. Reps.* 400.)